**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| MARY B., [1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 3:23-cv-252-SLS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## **MEMORANDUM OPINION**

In this action, Plaintiff Mary B. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 13, 14, 18.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 19, 20) and pursuant to 42 U.S.C. § 405(g).

Plaintiff asks the Court to reverse the Commissioner's decision and remand with instructions to award disability benefits. (ECF No. 14, Plaintiff's Memorandum Supporting Her Motion for Summary Judgment ("Pl.'s Mem.") at 17-18.) As the basis for such relief, Plaintiff argues that the ALJ's residual functional capacity ("RFC") finding failed to: (1) account for Plaintiff's intermittent incapacity, time off task, and related limitations in concentration, pace, and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

persistence; (2) afford the medical opinion of Daniel M. Hardy, M.D. ("Dr. Hardy") proper weight; and (3) account for Plaintiff's environmental limitations stemming from her migraines. (Pl.'s Mem. at 12-17.) In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding, and thus, the decision should be affirmed. (ECF No. 18, Defendant's Motion for Summary Judgment and Brief in Support Thereof ("Def.'s Mem.") at 15-24.)

For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's RFC findings related to Plaintiff's concentration, pace, and persistence, her environmental limitations, and her ability to engage in sustained, regular work consistent with the RFC. In addition, the ALJ's analysis of Dr. Hardy's medical opinion comports with applicable law and finds substantial support in the evidence. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 18), and AFFIRM the final decision of the Commissioner.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on September 29, 2020, alleging disability beginning on August 23, 2018. (Administrative Record ("R.") at 15, 80.)[2] In her application, Plaintiff alleged that she suffered from migraines, chronic depression, attention deficit disorder ("ADD"), and anxiety, among other impairments. (R. at 248-49.)

The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 80, 93.) Plaintiff requested a hearing before an ALJ, and one was held on October 11, 2022. (R. at 41-74, 135.) On October 24, 2022, the ALJ issued a written decision, finding Plaintiff not disabled under

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

the Social Security Act ("the Act") from August 23, 2018 (the alleged onset date) through June 30, 2021 (the date last insured). (R. at 15-32.) On February 16, 2023, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC.  *Id.* § 404.1520(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. § 404.1520(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III.     THE ALJ'S DECISION[3]

After finding that Plaintiff last met the insured status requirements of the Act on June 30, 2021 (R. at 17), the ALJ analyzed Plaintiff's claim in accordance with the five-step evaluation process (R. at 15-32). *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. at 17.) At step two, the ALJ found that Plaintiff suffered from multiple severe impairments, including migraines, depression, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and attention deficit hyperactivity disorder ("ADHD"). (R. at 17-18.) At step three, the ALJ determined that Plaintiff did not have an

---

[3] Because Plaintiff challenges the ALJ's conclusions regarding the limiting effects of her migraines and mental impairments, the Court restricts its discussion of the ALJ's decision and record evidence to those impairments.

impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18-21.)

The ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can frequently balance, stoop, crawl and climb ramps and stairs; and occasionally climb ladders, ropes, or scaffolds.  She can tolerate occasional exposure to dust, odors, fumes, pulmonary irritants, flickering lights and workplace hazards, such as unprotected heights and machinery with open, moving mechanical parts; and can tolerate moderate noise level.  She is able to understand, remember, and carry out simple instructions.  [Plaintiff] is able to tolerate occasional changes in a routine work setting.

(R. at 22.)  In conducting the RFC analysis, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 22.)

Regarding Plaintiff's symptoms, the ALJ acknowledged Plaintiff's testimony that her impairments caused issues with sleep, standing, walking, talking, understanding, following instructions, getting along with others, completing tasks, memorizing, and concentrating.  (R. at 22.)  She alleged that she could not work because of her migraines, trouble focusing and concentrating, and other symptoms.  (R. at 22.)  Plaintiff stated that lights, sounds, smells, and stress triggered headaches but that Botox injections helped to improve her migraines.  (R. at 22-23.)

After analyzing the medical evidence, Plaintiff's daily activities, and medical opinion evidence, the ALJ found Plaintiff's statements about "the intensity, persistence and limiting effects of these symptoms . . . not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."  (R. at 27.)  Regarding the medical evidence, the ALJ found a history of migraines and treatment through medication and Botox

injections. (R. at 23.) In 2018, a provider noted that Plaintiff "tolerated the Botox injections with no difficulty" and had "started a Medrol Dose pack … to break the headache cycle." (R. at 23.) On examination, Plaintiff appeared to be in no acute pain, her remote and recent memory were intact, she was attentive, she displayed normal fund of knowledge and normal concentration, and she was alert and oriented. (R. at 23.) In 2019, a provider noted that Plaintiff's cognitive function was intact and that she was alert and oriented. (R. at 23.) Plaintiff received a referral to Dr. Hardy for follow-up regarding migraines. (R. at 23.) Treatment records from 2020 described successful Botox treatments and normal examination findings. (R. at 25.) An April 2021 record stated that Plaintiff's sessions with Dr. Hardy had been positive and that she was "doing better." (R. at 26.) In November 2021, Dr. Hardy noted that Botox injections had reduced Plaintiff's migraines from 25 to 16 per month and that she took Topamax for migraine prevention, which Plaintiff believed was "beneficial." (R. at 26.) Dr. Hardy also noted that medical marijuana helped with Plaintiff's nausea and recommended other medications to prevent and abort Plaintiff's migraines. (R. at 26.) In May 2022, Dr. Hardy stated that Plaintiff continued to tolerate Botox "without difficulty" and should continue treatment. (R. at 27.)

As for Plaintiff's mental impairments, treatment notes from October 2019 through June 2021 show that she underwent an initial psychotherapy evaluation and reported excessive sleeping, social withdrawal, low concentration, and poor memory. (R. at 23.) On mental status examination, Plaintiff demonstrated "appropriate grooming and appearance, cooperative attitude, normal speech, tangential and interrupted thought process, … normal thought content, … intact recent and remote memory, intact attention span/concentration, … normal fund of knowledge," and full orientation to person, place, situation, and time. (R. at 23-24.) In March 2020, records from Commonwealth Counseling Associates indicated that Plaintiff reported poor concentration, but

that her examination findings were "within normal limits."  (R. at 25.)  In July 2020, Plaintiff reported that she might move to Baltimore to live with a romantic interest, and examinations noted findings within normal limits, apart from low and anxious mood.  (R. at 25.)  Plaintiff reported that medication had helped with her migraines.  (R. at 25, 459.)  Plaintiff continued psychotherapy appointments and medication for her anxiety.  (R. at 26.)  Plaintiff also reported using CBD gummies to help with anxiety and medicinal marijuana to help with headaches.  (R. at 26.)  In December 2021, a provider noted an improvement in Plaintiff's concentration due to an increased dosage of medication.  (R. at 27.)  In June 2022, Plaintiff presented with intact memory and attention and an organized thought process.  (R. at 27.)

The ALJ concluded that "[t]he treatment notes, examination findings and objective diagnostic testing results simply did not support the degree of limitation that [Plaintiff] alleged." (R. at 27.)  She noted that Plaintiff's impairments were "treated primarily with medications, Botox injection treatment, and counseling services, which appeared to have been relatively effective in controlling her symptoms when she was compliant with treatment."  (R. at 27.)  The ALJ further explained that "repeated physical and mental examinations have failed to consistently reveal results that would be" consistent with Plaintiff's "allegations of debilitating physical and mental symptoms."  (R. at 27.)  The ALJ acknowledged that Plaintiff experienced symptoms from her physical and mental impairments but found "no evidence that her impairments cannot be controlled or remedied with medication and appropriate treatment."  (R. at 27.)

The ALJ also found Plaintiff's daily activities inconsistent with her testimony of severe physical and mental limitations.  (R. at 27.)  Specifically, the ALJ noted that Plaintiff:

> lived alone, cared for two cats, listened to the television, read for pleasure, played games on the computer, did scrap booking, card making, candle making and crafting, took medications as prescribed with reminders, managed her own finances, drove a car unaccompanied weekly, scheduled/attended appointments,

shopped in stores and ordered groceries on line and had them delivered, and could follow verbal or written directions with some difficulty.

(R. at 27-28.)  Plaintiff also stated she could prepare simple meals, perform household chores such as laundry, washing dishes, and vacuuming, care for her personal hygiene and other personal needs although sometimes with difficulty, function in public places, and communicate with others.  (R. at 28.)  The ALJ found that Plaintiff's "ability to perform these activities is reflective of an individual at least able to perform a residual functional capacity as detailed above."  (R. at 28.)

The ALJ also considered medical opinions and prior administrative medical findings as required by 20 C.F.R. § 404.1520c.  (R. at 22.)  First, the ALJ considered the medical opinions of state agency consultants Daniel Camden, M.D. and Jack Hutcheson, Jr., M.D.  (R. at 28.)  Drs. Camden and Hutcheson found that Plaintiff was limited to light work.  (R. at 28.)  They found that Plaintiff must avoid concentrated exposure to noise, fumes, odors, dusts, gases, and poor ventilation, as well as hazards such as unprotected heights and moving mechanical machinery.  (R. at 28.)  The ALJ found their opinions persuasive, as they were generally consistent with the medical evidence and were supported by explanations and objective medical testing.  (R. at 28.) While new evidence had been received since Drs. Camden and Hutcheson submitted their reports, the ALJ found their conclusions to "remain somewhat consistent with that new evidence."  (R. at 28.)  The ALJ also included greater limitations in the RFC determination.  (R. at 28.)

Next, the ALJ considered the opinions of state agency reviewing psychologists Nicole Sampson, Ph.D. and Leslie Montgomery, Ph.D.  (R. at 29.)  The ALJ found these opinions persuasive.  (R. at 29.)  Dr. Sampson indicated that Plaintiff could understand and remember simple, repetitive, detailed, and complex tasks, and while she had a limited ability to concentrate, "could meet the basic mental demands of simple tasks and instructions, and could focus and attend for at least two hours at a time" during a normal workday.  (R. at 29.)  Dr. Sampson found Plaintiff

could get along with others.  (R. at 28.)  Further, she noted that Plaintiff would benefit from advanced warning for workplace changes, and "needed changes to be introduced slowly and gradually."  (R. at 28.)  Dr. Montgomery similarly found that Plaintiff could "understand and remember simple and repetitive one and two step instructions."  (R. at 29.)  She opined that Plaintiff had restrictions in concentrating for extended periods of time, but also found that Plaintiff "could meet the basic mental demands for simple tasks and instructions, and could focus and attend for at least two hours at a time" during a normal workday.  (R. at 29.)  Like Dr. Sampson, Dr. Montgomery opined that Plaintiff could get along with others, and that she would need changes introduced slowly and gradually and would benefit from advanced notice of changes.  (R. at 29.)

The ALJ found the opinions of Drs. Sampson and Montgomery supported by objective medical testing and consistent with the medical evidence of record, "including treatment notes showing some abnormalities and symptoms related to her mental health impairments."  (R. at 29.) Indeed, the ALJ found that treatment notes indicated that Plaintiff "did have severe mental health impairments or restrictions and she did experience some limitations from her mental health symptoms, which have improved with appropriate medication treatment."  (R. at 29.)  Again, the ALJ included additional limitations in the RFC determination.  (R. at 29.)

Lastly, the ALJ considered the opinion of Dr. Hardy, Plaintiff's treating neurologist.  (R. at 29.)  Dr. Hardy opined that Plaintiff could not tolerate even low-stress work or perform even basic work activities due to her chronic migraines.  (R. at 29.)  He stated that Plaintiff would need to take frequent unscheduled breaks lasting multiple hours each workday and would be off task 25 percent or more due to interference with attention and concentration.  (R. at 29.)  He also expected Plaintiff to be absent from work more than four days per month due to her migraines.  (R. at 29.) The ALJ found Dr. Hardy's opinion not supported by the record evidence and internally

inconsistent with his own treatment records for Plaintiff.  (R. at 29-30.)  Specifically, the ALJ noted that examination findings regarding Plaintiff's headaches and physical abilities and Plaintiff's own statements and reported activities did not support the level of limitations found by Dr. Hardy.  (R. at 30.)  Therefore, the ALJ found Dr. Hardy's opinion less persuasive.  (R. at 30.)

The ALJ concluded that "the objective medical evidence, the opinions already discussed above, and [Plaintiff's] actual range of daily activities demonstrate that [she] has the residual functional capacity to perform a range of light work . . . with various postural, environmental, and mental limitations."  (R. at 30.)

After completing the RFC assessment, the ALJ moved to step four, finding Plaintiff unable to perform any past relevant work (namely, as a case worker and probation officer).  (R. at 30.) The ALJ then determined Plaintiff's vocational factors, including that Plaintiff met the definition of a younger individual on the date last insured and had at least a high school education.  (R. at 30.)

At step five, after considering vocational expert testimony, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform given her limitations and vocational factors, including routing clerk, mail sorter, and retail marker.  (R. at 31-32.)  Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Act from August 23, 2018, the alleged onset date, through June 30, 2021, the date last insured.  (R. at 32.)

## IV.    ANALYSIS

Plaintiff alleges multiple assignments of error, all pertaining to the ALJ's RFC finding. The Court addresses each argument below.

A.  **Substantial Evidence Supports the ALJ's RFC Determination, Including Limitations Pertaining to Plaintiff's Ability to Concentrate, Persist and Maintain Pace and Ability to Engage in Regular, Sustained Work**

Plaintiff first argues that the RFC determination fails to include sufficient limitations for concentration, pace, and persistence given the "combined effects of [Plaintiff's] migraines, depression, anxiety, and ADHD" which cause her "to be intermittently incapacitated." (Pl.'s Mem. at 12-13.)  Relatedly, Plaintiff contends that the ALJ "fail[ed] to adequately account" for her "time off task and absenteeism." (Pl.'s Mem. at 15-16.)  She contends she cannot "show up to work on a consistent basis" and "would need to take unscheduled breaks throughout the workday" because of her migraines and mental impairments. (Pl.'s Mem. at 16-17.)  Review of the record establishes that the ALJ reasonably accounted for Plaintiff's limitations stemming from her migraines and mental impairments, specifically finding that she could understand, remember, and carry out simple instructions and could sustain regular work consistent with the RFC determination. (R. at 22, 27.)

The ALJ rejected Plaintiff's alleged degree of concentration difficulty as unsupported by treatment notes, examination findings, and diagnostic results. (R. at 27.)  The ALJ found no evidence that her impairments could not be controlled with medication and treatment. (R. at 27.)  Indeed, Plaintiff herself reported that Botox treatment had helped with her migraines during the relevant period, and a medical provider noted that medication had improved Plaintiff's concentration. (R. at 27, 57-58.)  Drs. Sampson and Montgomery opined that Plaintiff had restrictions in her ability to concentrate, but "could meet the basic demands [of] simple tasks and instructions, and could focus and attend for at least two hours at a time" during a workday. (R. at 29.)  The ALJ found these opinions persuasive. (R. at 29.)  Moreover, Plaintiff's ability to live independently, care for pets, play computer games, engage in crafts and scrapbooking, prepare meals, shop, drive, manage finances, attend scheduled appointments, carry out daily tasks, and

adequately care for her personal hygiene and other needs "invariably called for some degree of concentration." (R. at 21, 27.) Those activities, "in conjunction with the medical evidence demonstrating minimal abnormalities," support the ALJ's conclusion that Plaintiff could sustain a regular work schedule consistent with the RFC limitations, including that Plaintiff could "understand, remember, and carry out simple instructions." (R. at 22, 27.)

This evidence provides substantial support for the ALJ's conclusions. The RFC determination reasonably accounted for Plaintiff's limitations related to persistence, concentration, and pace and ability to engage in sustained work as found by the ALJ.[4] To the extent Plaintiff takes a different view of the evidence,[5] the Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

### B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Hardy's Medical Opinion, and Substantial Evidence Supports the ALJ's Findings

Plaintiff next argues that the ALJ failed to apply correct legal standards in considering Dr. Hardy's opinion. Specifically, Plaintiff contends that the ALJ failed to adequately explain why

---

[4] Plaintiff cites *Rose v. Saul* to argue otherwise. No. 7:19-cv-91, 2020 WL 4740479, at *4 (E.D.N.C. Aug. 14, 2020). (Pl.'s Mem. at 12-14.) That case is distinguishable. The *Rose* court found that the record evidence therein established the claimant as intermittently incapacitated, yet the ALJ's decision contained "no finding or discussion about his ability to perform . . . work with any regularity or consistency." *Id.* at *4. Here, the ALJ explained that "despite alleging significant functional limitations, repeated physical and mental examinations have failed to consistently reveal results that would be expected with the degree of limitation alleged." (R. at 27.) Thus, the ALJ found, Plaintiff could "sustain regular work" despite her alleged limitations. (R. at 27.) This conclusion is supported by *Shinaberry v. Saul*, in which the Fourth Circuit refused to "impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d 113, 121 (4th Cir. 2020). Rather, a sufficient explanation at step three can suffice to explain why a limitation was not included. *Id.*

[5] Plaintiff argues that the ALJ "erroneously states" that Plaintiff was able to remedy her migraines with medications and treatment, as "substantial evidence … clearly and consistently indicates that despite trying various medications and injections, [Plaintiff's] migraines and mental health symptoms have persisted." (Pl.'s Mem. at 17.) While it is true that Plaintiff's migraines have not disappeared, substantial evidence in the record supports the ALJ's conclusion that medication and treatment have lessened her symptoms. (R. at 393, 407, 410, 428, 437.) Indeed, Plaintiff even admitted that this was so. (R. at 393.)

she found Dr. Hardy's opinion less persuasive and failed to adequately address each factor in 20 C.F.R. § 404.1520c. (Pl.'s Mem. at 14-15 (citing R. at 29-30).)  Review of the decision and record shows that the ALJ analyzed the medical opinion evidence consistent with applicable legal standards and that substantial evidence supports the ALJ's findings regarding the weight assigned to Dr. Hardy's opinion.

### 1. *Applicable Regulations for Evaluating Medical Opinion Evidence*

Under applicable regulations,[6] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source.  20 C.F.R. § 404.1520c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id.* § 404.1520c.

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written decision.  *Id.* § 404.1520c(b)(2).  The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

---

[6] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  20 C.F.R. § 404.1520c.  (*See also* Pl.'s Mem. at 14; Def.'s Mem. at 22.)

sources in the claim, the more persuasive the medical opinion(s) or prior
administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were

considered.  *Id.* § 404.1520c(b)(2).

> ### 2. *Dr. Hardy's Opinion and the ALJ's Assessment of the Same*

In December 2020, Dr. Hardy completed a Headaches Medical Source Statement.  (R. at

454-58.)   Therein, he listed Plaintiff's diagnosis as chronic migraines.   (R. at 454.)   He

characterized Plaintiff's migraines as "severe," with her experiencing three to four headaches per

week or 15 to 20 per month, each lasting between four to 10 hours. (R. at 454.) Dr. Hardy opined

that rest, quiet, dark, cold packs, and medications helped to alleviate Plaintiff's symptoms.  (R. at

29, 455.)  Dr. Hardy found that Plaintiff's headaches precluded her from performing even basic

work activities or low stress work and indicated that Plaintiff "couldn't tolerate [her] last job." (R.

29, 455-56.)  He indicated that Plaintiff would require multiple unscheduled breaks, each lasting

"hours" in which she would need to lie down and sit quietly.  (R. at 29, 456.)  He found that

Plaintiff would be "off-task" more than 25 percent of the workday and absent from work more

than four days per month.  (R. at 29, 456.)

After summarizing Dr. Hardy's findings, the ALJ found it "less persuasive and inconsistent

with other evidence throughout the record."  (R. at 30.)  Specifically, the ALJ explained that Dr.

Hardy's assessment was unsupported by previously referenced evidence, including "examination

findings regarding headaches and physical abilities," and "appears to overstate [Plaintiff's]

limitations."  (R. at 29-30.)  Further, the ALJ found Dr. Hardy's opinion "internally inconsistent,"

as the limitations referenced therein did not correlate with the limitations opined elsewhere in his

notes. (R. at 30.)  For example, in his notes, Dr. Hardy dictated that Plaintiff reported that "her

headaches were doing well with treatment, and that she did not complain of frequent headaches

lasting for hours." (R. at 30 (citing Exhibits 5F and 14F).) The ALJ found Dr. Hardy's opinion inconsistent with his "own examination reports," which "fail[ed] to consistently describe any abnormalities in [Plaintiff's] physical presentation[] due to complaints of headaches, as well as examination findings, and [Plaintiff's] testimony and reported activities of daily living discussed above." (R. at 30.)

### 3.   The ALJ Did Not Err in Her Analysis of Dr. Hardy's Opinion

Plaintiff argues that the ALJ improperly concluded that the opinion was "less persuasive" without explaining "what portion(s) of the opinion, if any, she [found] to be at all persuasive." (Pl.'s Mem. at 14 (citing R. at 29-30).) Further, Plaintiff argues that the ALJ failed to address each factor in 20 C.F.R. § 404.1520c, specifically "how [Plaintiff's] testimony o[f] her reported activities of daily living are inconsistent with Dr. Hardy's opinion." (Pl.'s Mem. at 15.) Plaintiff argues that the ALJ's failure to "cite any specific treatment notes in support of her assertions" makes it "unclear what specific medical reports the ALJ finds to be inconsistent" with Dr. Hardy's opinion. (Pl.'s Mem. at 15.) The Commissioner counters that the ALJ "followed the controlling regulations" and was "reasonably persuaded by the prior administrative medical findings" and "less persuaded by Dr. Hardy's opinion." (Def.'s Mem. at 22-23.)

As an initial matter, to the extent Plaintiff contends that the ALJ erred by not addressing each of the 20 C.F.R. § 404.1520c factors (Pl.'s Mem. at 15), the regulation explicitly provides that the ALJ *may*, but is not required, to explain how factors other than supportability and consistency were considered. *Id.* § 404.1520c(b)(2). Here, the ALJ acknowledged the treating relationship and Dr. Hardy's specialty as a neurologist. (R. at 29.) Moreover, the ALJ complied with the regulations by addressing supportability and consistency.

The ALJ found Dr. Hardy's opinion unsupported by evidence in the record, including other examination findings related to headaches and physical abilities, and found that his opinion appeared to exaggerate Plaintiff's limitations.  (R. at 30.)  Further, the ALJ found Dr. Hardy's own statement inconsistent with his opinions contained elsewhere in the record.  (R. at 30.)  Dr. Hardy had been Plaintiff's treating neurologist since 2008, apart from 2012 to 2017, when Plaintiff was living in another area.  (Pl.'s Mem. at 5; R. at 437.)  Upon her return in May 2017, Plaintiff presented to Dr. Hardy with complaints of migraines occurring four times per week, accompanied by a daily low-grade headache.  (R. at 437.)  She reported that her migraines were accompanied by nausea, photophobia, and phonophobia.  (R. at 437.)  At that time, Plaintiff had been unsuccessfully treating her migraines with medication.  (R. at 439.)  Dr. Hardy began treating Plaintiff's migraines with Botox injections every twelve weeks.  (R. 396, 398, 401, 404, 415, 418, 425, 431, 434.)  By September 2017, Plaintiff reported a decrease in the intensity of her migraines, as well as a reasonable response to a new medication.  (R. at 428.)  In August 2018, Dr. Hardy noted that her Botox injections had reduced her migraines from 25 to seven per month.  (R. at 410.)  Dr. Hardy opined that stress resulted in an increase in migraine and tension headaches.  (R. at 410.)  Plaintiff reported to the emergency room twice and had taken a steroid pack once.  (R. at 410.)  Dr. Hardy recommended Plaintiff seek counseling to address her stress levels.  (R. at 410.)

Thereafter, Plaintiff lost her health insurance and was unable to receive the injections for a period.  (R. at 407.)  In January 2020, Plaintiff reported to Dr. Hardy that her migraines had increased to eighteen per month.  (R. at 407.)  In March 2020, Plaintiff sought another round of Botox injections and told Dr. Hardy that she had done well with the last set of injections. (R. at 404.)  In October 2020, Plaintiff again reported that Botox injections had reduced her migraines from 25 to seven per month.  (R. at 393.)  Following the completion of the Medical Source

Statement, Dr. Hardy continued seeing Plaintiff for the period at issue.  He noted that Plaintiff continued Botox "without difficulty."  (R. at 992, 995.)  The ALJ concluded that Dr. Hardy's examination notes reported that Plaintiff's migraines were relatively controlled with medication and Botox during the relevant period.  (R. at 393, 407, 410, 428, 437.)  He consistently opined that she was alert, oriented, and attentive with recent and remote memory intact, able to provide a detailed and accurate history, and demonstrated normal concentration and fund of knowledge.  (R. at 408, 411, 413, 422-23, 429, 438.)

Based on this evidence, the ALJ reasonably found Dr. Hardy's opinion internally inconsistent with treatment notes during the relevant period showing Plaintiff's headaches had improved and were controlled with medication and treatment.  (R. at 30.)  While Plaintiff takes issue with the ALJ's style of citation to Dr. Hardy's treatment notes, the ALJ's decision provides a sufficient narrative explanation and citation to the record that allows the Court to conduct a meaningful judicial review.

Regarding consistency, the ALJ found Dr. Hardy's assessment inconsistent with other examination findings, Plaintiff's testimony, and Plaintiff's reported activities of daily living.  (R. at 30.)  The ALJ referenced a prior portion of her analysis pertaining to Plaintiff's activities of daily living, including that, among other things, Plaintiff could care for pets, craft, play games on the computer, prepare meals, shop, drive a car, manage her own finances (R. at 21), exercise (R. at 24), pursue romantic relationships (R. at 25), live alone, attend scheduled appointments, carry out daily tasks, care for her personal hygiene and other personal needs (R. at 27), listen to television, read for pleasure, scrap book, make candles, make cards, take medications with reminders, perform simple household chores (such as laundry, vacuuming, and washing dishes), and communicate with others via video chat, calling, emailing, and texting (R. at 27-28.  The ALJ

also noted that Plaintiff moved back to Virginia in 2020 to help care for her elderly parents.  (R. at 24.)  The ALJ found these activities inconsistent with Dr. Hardy's opinion.

The ALJ also considered other medical evidence and medical opinions, finding them to be more persuasive than Dr. Hardy's.  (R. at 28-29.)  After summarizing the medical evidence, the ALJ found that "[t]he treatment notes, examination findings and objective diagnostic testing results simply did not support the degree of limitation that [Plaintiff] alleged."  (R. at 27.)  Specifically, the ALJ concluded that medication and Botox injection treatments had been relatively effective in controlling Plaintiff's symptoms and that repeated examinations failed to show results that would be expected with the degree of limitation alleged, thus undermining Plaintiff's allegations of debilitating symptoms.  (R. at 27.)  As discussed above, the ALJ found the opinions of Dr. Camden and Dr. Hutcheson more persuasive regarding Plaintiff's limitations.  (R. at 28.)  By referencing earlier portions of the decision and outlining the reasons for assigning Dr. Hardy's opinion less weight, the ALJ provided a logical bridge connecting the substantial supporting evidence to her conclusions.  (R. at 30.)  *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (noting that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion"); *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *8 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole).  Accordingly, the ALJ's fact-finding is supported by substantial evidence, and she did not err in finding Dr. Hardy's opinion to be less persuasive.

## C.   The ALJ Reasonably Accounted for Plaintiff's Environmental Limitations in the RFC

Plaintiff next contends that the ALJ rendered a "legally insufficient" RFC that "fail[ed] to adequately account for [Plaintiff's] environmental limitations caused by her migraines . . . ."  (Pl.'s Mem. at 15-16.)  The RFC limits Plaintiff to occasional exposure to dust, odors, fumes, pulmonary irritants, flickering lights and workplace hazards, such as unprotected heights and machinery with

open, moving mechanical parts and moderate noise level.  (R. at 22.)  Plaintiff argues that the evidence shows that "a more appropriate RFC would limit [Plaintiff] to no exposure" to environmental irritants or bright lights and a work environment with "noise no louder than a normal office environment."  (Pl.'s Mem. at 16.)

Contrary to Plaintiff's contention, the ALJ considered the evidence in the record related to Plaintiff's environmental limitations and included appropriate limitations that find substantial support in the evidence. The ALJ acknowledged Plaintiff's statements that "lights, sounds, smells, and stress triggered headaches."  (R. at 22.)  She also found Drs. Camden and Montgomery's opinion that Plaintiff "must avoid *concentrated* exposure to noise, fumes, odors, dusts, gases, and poor ventilation, and hazards such as unprotected heights and moving mechanical machinery" persuasive. (R. at 28 (emphasis added).)  Finally, the ALJ considered Plaintiff's reported activities, including her ability to care for her cats, listen to the television, play computer games, make candles, drive, attend appointments, shop in stores, and perform household chores.  (R. at 27-28.) This evidence supports the ALJ's finding that Plaintiff could tolerate occasional exposure to dust, odors, fumes, pulmonary irritants, and flickering lights and could tolerate moderate noise.  Again, to the extent Plaintiff takes a different view of the evidence, the Court declines to reweigh conflicting evidence or substitute its judgment for that of the ALJ.  *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No.

18), and AFFIRM the final decision of the Commissioner.  An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: September 30, 2024